# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CASE NO. 5:16-CV-00088-RLV

DISH NETWORK L.L.C.,
ECHOSTAR TECHNOLOGIES L.L.C.,
and NAGRASTAR LLC,

    Plaintiffs,

v.

LONNIE HATLEY,

    Defendant.

**ORDER**

**BEFORE THE COURT** is Plaintiffs' Motion for Default Judgment (the "Motion") (Doc. 7) against Defendant, which was filed on August 2, 2016. Defendant did not respond to the Motion.

## I. BACKGROUND

Defendant was personally served (Doc. 6) with Plaintiffs' Complaint (Doc. 1) on June 17, 2016, but did not file an Answer or respond otherwise. Plaintiffs filed a Motion for Entry of Default on July 12, 2016 (Doc. 7), and the Clerk filed Entry of Default the same day. (Doc. 8) Accordingly, the allegations of Plaintiffs' Complaint (Doc. 1), excluding those pertaining to damages, are deemed admitted by Defendant. *Id.*

Plaintiffs filed this action on May 25, 2016, alleging that Defendant circumvented Plaintiffs' security technology and intercepted the copyrighted satellite television programming broadcast by Plaintiff DISH Network L.L.C. ("DISH Network") without paying the required subscription fee. (Doc. 1, at 2). DISH Network is a multi-channel video provider that delivers video, audio, and data services to approximately 14 million customers throughout the United States, Puerto Rico, and the U.S. Virgin Islands via a direct broadcast satellite system. (Doc. 1, at

1

3). DISH Network uses high-powered satellites to broadcast, among other things, movies, sports, and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee or, in the case of a pay-per-view movie or event, the purchase price. *Id.*

The works broadcast by DISH Network are copyrighted, and DISH Network has the authority of the copyright holders to protect the works from unauthorized reception and viewing. *Id.* DISH Network programming is digitized, compressed, and scrambled prior to being transmitted to multiple satellites located in geo-synchronous orbit above Earth. *Id.* The satellites, which have relatively fixed footprints covering the United States and parts of Canada, Mexico, and the Caribbean, relay the encrypted signal back to Earth where it can be received by DISH Network subscribers who have the necessary equipment. *Id.* The necessary equipment consists of receivers, dish antennae, and other digital equipment supplied by Plaintiff EchoStar Technologies, L.L.C., as well as smart cards and other proprietary security technology systems supplied by Plaintiff Nagrastar LLC. (Doc. 1, at 3–4).

Plaintiffs received the records of a confidential informant who oversaw and managed the sale of subscriptions to a pirate television service called NFusion Private Server ("NFPS"). (Doc. 1, at 2); s*ee also* (Doc 10-2, at 2) (explaining agreement between Plaintiff Nagrastar LLC and confidential informant). Each subscription consists of a passcode that enables access to the NFPS servers, which transmit DISH Network's proprietary control word— or "keys"—over the Internet to the subscriber's receiver, allowing a subscriber to decrypt DISH Network's satellite signal and view DISH Network programming without permission. (Doc. 1, at 2). This form of piracy is referred to as "control word sharing," "Internet key sharing," or more simply "IKS." (Doc. 1, at 5).

The records obtained by Plaintiffs demonstrated that, on or about January 1, 2012, Defendant purchased at least two subscriptions for IKS services provided by NFPS, each believed to be valid for a one-year period of time. (Doc. 1, at 6). These services allowed Defendant to decrypt DISH Network's satellite signal and view DISH Network programming without a subscription. *Id.* On August 2, 2016, Plaintiffs submitted further evidence with their Memorandum in Support of Motion for Default Judgment (Doc. 10) showing that Defendant utilized online forums to gain technical assistance needed to maintain access to IKS services in October and November of 2014. (Doc. 10-3, at 8–33).

Plaintiffs' Complaint asserts three independent causes of action. (Doc. 1, at 7–9). Count I asserts that Defendant willfully, and for the purpose of commercial advantage or private financial gain, circumvented an access control measure in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1). (Doc. 1, at 7–8). Count II asserts that Defendant willfully, and for the purpose of commercial advantage or private financial gain, received satellite signals without authorization in violation of the Federal Communications Act, 47 U.S.C. § 605(a). (Doc. 1, at 8). Count III asserts that Defendant intentionally, and for tortious and illegal purposes or for commercial advantage or private financial gain, was intercepting satellite signals in violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511(1)(a) and 2520. (Doc. 1, at 8–9).

In Plaintiff's Motion for Default Judgment, Plaintiffs seek default judgment against Defendant for Count III alleged in the Complaint. (Doc. 9, at 1). Plaintiffs seek relief in the form of an award of statutory damages in the amount of $10,000 and a permanent injunction enjoining Defendant's activities regarding the piracy of DISH Network programming. *Id.* Provided that this Court awards the requested relief, Plaintiffs then request that Count I and Count II be dismissed with prejudice so final judgment may be entered. (Doc. 10, at 13). On August 2, 2016, Defendant

was served by first-class mail at the address where he received personal service of Plaintiffs' pleadings with both Plaintiffs' Motion for Default Judgment (Doc. 9, at 2) and Plaintiffs' Memorandum in Support of Motion for Default Judgment (Doc. 10, at 14).

## II. STANDARD OF REVIEW

Plaintiff's motion for default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 55. Upon a showing that a party against whom judgment is sought has failed to plead or otherwise defend, the clerk must enter the party's default. Fed. R. Civ. P. 55(a). On July 12, 2016, the Clerk did file an Entry of Default in this case as to Defendant. (Doc. 8). After the clerk has entered a default, the plaintiff may seek a default judgment. *See* Fed. R. Civ. P. 55(b). The entry of a default judgment is left to the sound discretion of the court, and no party is entitled to a favorable entry of default judgment as a matter of right. *See Black v. F & S, LLC*, 2008 U.S. Dist. LEXIS 100577, at *6 n.6 (W.D.N.C. 2008) (Voorhees, J.) (citing *United States v. Ragin*, 113 F.3d 1233, 1997 U.S. App. LEXIS 11827, at *5 (4th Cir.1997)); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir.1986)). *See also Advantage Media Group v. Debnam*, 2011 U.S. Dist. LEXIS 62678, at *3 (M.D.N.C. 2011); *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009); *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

## III. DEFAULT JUDGMENT

This Court is authorized by Fed. R. Civ. P. 55(b)(2) to enter default judgment against Defendant, who was personally served (Doc. 6) and has otherwise not participated at any step in this litigation. A consequence of the clerk's entry of a default is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *S.E.C. v. Marker*, 427 F. Supp. 2d 583, 586 (M.D.N.C. 2006). *See also Lawbaugh*, 359 F. Supp. 2d at 422.

Defendant's intentional use of IKS services through NFPS allowed Defendant to intercept Plaintiffs' control words and access DISH Network satellite programming, for tortious and illegal purposes or for commercial advantage or private financial gain, constituting a violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511(1)(a), 2520. (Doc. 1, at 8–9). Defendant's actions caused actual and imminent irreparable harm to Plaintiffs. (Doc. 1, at 7). Through IKS piracy, Defendant enjoyed unlimited access to DISH Network programming, including premium and pay-per-view channels, causing lost revenues that cannot be fully calculated. *Id.* Further, Defendant's actions damaged the business reputations and goodwill of the Plaintiffs, resulting in the need for costly security updates and legal actions aimed at stopping satellite piracy. *Id.* Without an injunction by this Court, Defendant will continue to access the satellite transmissions of DISH Network. (Doc. 1, at 8–9).

Under Fed. R. Civ. P. 55(c), a court may set-aside the entry of a default "for good cause." Defendant has not filed a motion to set aside the entry of default, has not responded the pleadings as required by Fed. R. Civ. P. 8 following personal service, and has not responded to Plaintiffs' Motion for Default Judgment or accompanying brief in support. Where a motion to set-aside entry of default is filed, the United States Court of Appeals for the Fourth Circuit has set forth the relevant factors to make this determination as follows:

> When deciding whether to set aside an entry of default, a district court should consider (1) whether the moving party has a meritorious defense, (2) whether it acts with reasonable promptness, (3) the personal responsibility of the defaulting party, (4) the prejudice to the party, (5) whether there is a history of dilatory action, and (6) the availability of sanctions less drastic.

*Payne v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006) (citations omitted). This "good cause" standard is liberally construed "'in order to provide relief from the onerous consequences of defaults . . . .'" *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987) (quoting *Tolson*

*v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969) ("Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits.")).

Upon review of the pleadings, the Plaintiffs' Motion for Default Judgment, and the Plaintiffs' Memorandum in Support of Default Judgment, and taking note of Defendant's failure to respond to any of Plaintiffs' filings served upon him, this Court finds no reason to punish the Plaintiffs for Defendant's failure to respond to the pleaded allegations or otherwise participate in the litigation process. Encrypted broadcasts of satellite television programming, such as those transmitted by DISH Network, constitute "electronic communications" under the Electronic Communications Privacy Act. *DirecTV Inc. v. Nicholas*, 403 F.3d 223, 225 (4th Cir. 2005) ("It is undisputed that satellite television transmissions constitute electronic communications under § 2510(12)"). *See also, e.g.*, *United States v. One Macom Video Cipher 11*, 985 F.2d 258, 260-61 (6th Cir. 1993) (recognizing that the Electronic Communication Privacy Act's plain language encompasses satellite signals). Through default, Defendant has admitted to the pleaded violations of 18 U.S.C. §§ 2511(1)(a) and 2520. Thus, entry of default judgment is appropriate in this matter, and this Court recognizes that a permanent injunction pursuant to 18 U.S.C. § 2520(b)(1) would constitute appropriate relief.

## IV. DAMAGES

Allegations regarding damages are, unlike factual allegations, not taken as true upon entry of default judgment. *Marker*, 427 F. Supp. 2d at 586. In situations where damages cannot be readily determined, a court may conduct a hearing to determine the amount of damages, if any, owed to a plaintiff. Fed. R. Civ. P. 55(b)(2)(B). Violations of the Electronic Communication Privacy Act, however, do not require a hearing, as Congress has imposed statutory damages of

"whichever is the greater of $100 a day for each day of violation or $10,000" for all violations of the act not arising under 18 U.S.C. § 2511(5). 18 U.S.C. § 2520(c)(2)(B). The Court may enter actual damages only if the "sum of the actual damages suffered by the plaintiff and any profits made by the violator" would exceed the statutory damages. 18 U.S.C. § 2520(c)(2).

This action does not arise under 18 U.S.C. § 2511(5), as it does not involve unencrypted satellite signals or a radio broadcast, and Defendant's failure to respond to the pleadings has effectively precluded Plaintiffs from engaging in further discovery in order to calculate any actual damages that may exceed the statutory damages enumerated by Congress. Thus, the statutory damages provision under § 2520(c)(2)(B) is the appropriate mechanism for calculating what, if any, damages are due to Plaintiffs. Additionally, 18 U.S.C. § 2520(b)(3) provides that a party aggrieved by a violation of the Electronic Communications Privacy Act may recover "a reasonable attorney's fee and other litigation costs reasonably incurred." Appropriately, Plaintiffs have requested relief in the form of statutory damages in the amount of $10,000 as well as costs, attorneys' fees, and investigative expenses as authorized by the aforementioned law. (Doc. 1, at 10).

The United States Fourth Circuit Court of Appeals, like the majority of circuit courts, recognizes that the statutory damages under § 2520(c)(2) are discretionary. *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 324 (4th Cir. 2008) (citing *Nalley v. Nalley*, 53 F.3d 649, 652–53 (4th Cir. 1995)). *See, e.g.*, *DIRECTV, Inc. v. Brown*, 371 F.3d 814, 818 (11th Cir. 2004); *Dorris v. Absher*, 179 F.3d 420, 429 (6th Cir. 1999). In *Nalley*, the Fourth Circuit alluded to a non-exclusive framework of factors that a district court may use to determine if discretionary statutory damages under § 2520(c)(2) are appropriate, including the *de minimis* nature of the violation, financial loss to plaintiffs, and financial benefit to defendants. 53 F.3d at 653–54. *Nalley* involved a domestic

dispute in which a woman played a tape recording of a phone call, containing evidence of her husband's extramarital affair, to certain family members and her attorney. *Id.* at 650, 654. In that instance, the trial court did not abuse its discretion in refusing to award statutory damages. *Id.* at 654.

Conversely, in *Rawlins*, the Fourth Circuit noted that imposing statutory sanctions on defendants engaging in the intentional interception of encrypted satellite transmission—"requiring greater technical savvy and efforts" than those who intercept unencrypted transmissions—comported with Congress's intent in enacting the Electronic Communications Privacy Act. 523 F.3d at 328 (quoting *DIRECTV, Inc. v. Nicholas*, 403 F.3d 223, 227–28 (4th Cir. 2005). Here, Defendant's conduct was essentially similar to that of the defendant in *Rawlins*: Defendant used third-party devices and services to gain unauthorized access to the encrypted satellite communications in order to view Plaintiffs' programming without authorization. (Doc. 1, at 6–7). *See Rawlins*, 523 F.3d at 321–22.

Further, Defendant's conduct was not *de minimis*. Defendant enjoyed unlimited access to otherwise-encrypted DISH Network programming for a period of time that appears to exceed two years. (*See* Doc. 1, at 6; Doc. 10-3, at 8–33). Defendant caused actual and imminent harm to Plaintiffs in the form of lost revenues, damaged business reputations and goodwill, and the requirement to engage in costly security updates and legal actions aimed at stopping satellite piracy. (Doc. 1, at 7). Defendant enjoyed personal financial benefits from his conduct, as he was able to view programming, including premium and pay-per-view channels, without purchasing a subscription. (Doc. 1, at 6–7).

Upon examination of these factors and in light of Congress's intent, this Court has determined that discretionary statutory damages are appropriate. Defendant's failure to respond

to the pleadings or otherwise participate in this litigation has precluded any ability to determine actual damages, and given the intentional and technically-savvy nature of Defendant's conduct, refusal to impose the mandatory-minimum statutory damages of $10,000 pursuant to 18 U.S.C. § 2520(c)(2) would undermine Congress's intent in enacting the Electronic Communications Privacy Act. Further, given the intentional and technically-savvy nature of Defendant's conduct, Plaintiffs are entitled to recover reasonable attorney's fees and other litigation costs reasonably incurred pursuant to 18 U.S.C. § 2520(b).

## V. DECRETAL

**IT IS, THEREFORE, ORDERED THAT**

(1) Plaintiffs' Motion for Default Judgment with respect to Count III (Doc. 9) is hereby **GRANTED;**

(2) Plaintiffs are hereby **AWARDED** the amount of **TEN THOUSAND DOLLARS AND ZERO CENTS ($10,000)** in statutory damages pursuant to 18 U.S.C. § 2520(c)(2) to be recovered from Defendant;

(3) Plaintiffs are hereby **ORDERED** to submit to this Court within twenty (20) days an accurate accounting of attorney's fees and other litigation costs so this Court may determine the amount to due to Plaintiffs pursuant to 18 U.S.C. § 2520(b);

(4) Plaintiffs are hereby **ORDERED** that failure to timely submit the requested accounting within twenty (20) days will constitute forfeiture of the right to recover fees and costs pursuant to 18 U.S.C. § 2520(b) from Defendant;

(5) Defendant and his employees, agents, representatives, attorneys, and all persons acting or claiming to act on his behalf or under his direction or authority and all persons acting in concert or in participation with him are hereby **PERMANENTLY ENJOINED**

from circumventing Plaintiffs' security system and receiving without authorization DISH Network's satellite transmissions of television programming;

(6) Count I and Count II are hereby **DISMISSED** with prejudice; and

(7) The Clerk is directed to keep this case open until this Court has determined the appropriate attorney's fees and litigation costs due to Plaintiffs, and following the entry of that award, should Plaintiffs timely submit the requested accounting or following the failure of Plaintiffs to timely submit the requested accounting, to administratively terminate this case as of final judgment in favor of Plaintiffs.

Signed: May 25, 2017

Richard L. Voorhees
United States District Judge